UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANA H. HODGDON, ) | |
| ) | |
| Plaintiff, ) | No.  06-C-5399 |
| ) | |
| v. ) | Judge Mark Filip |
| ) | Magistrate Judge Cole |
| NORTHWESTERN UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

### PLAINTIFF'S MOTION TO QUASH AND FOR PROTECTIVE ORDER

Comes Now Plaintiff, Dana Hodgdon, by his attorneys, and pursuant to Fed. R. Civ. P. 26(c) and 45(c)(3)(A) moves this Honorable Court to quash four subpoenas that Defendant has served on Plaintiff's health care providers, Evanston Northwestern Healthcare, Manor Care Wilmette, Rush Behavioral Health and Dr. Kyong Chris Oh, and to quash one subpoena served upon Plaintiff's current employer, DePaul University, and enter a protective order prohibiting Defendant's counsel from seeking Plaintiff's protected medical information or from contacting Plaintiff's current employer through discovery in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(d)(4).  In support of his motion, Plaintiff respectfully states the following.

**Defendant's Subpoenas for Medical Records Violate the ADA
and Undermine the Purpose of This Litigation**

1.     Plaintiff filed a four count Complaint on October 4, 2006, alleging Defendant engaged in various discriminatory actions in violation of the Americans with Disabilities Act of 1990 ("ADA") and further retaliated against Plaintiff in violation of the ADA and the Family Medical Leave Act of 1993 ("FMLA").

2. Count I of Plaintiff's Complaint specifically details Defendant's demands that Plaintiff acquiesce to an extremely intrusive and excessive examination into Plaintiff's medical history, in violation of the ADA. Plaintiff has and continues to insist that Defendant has no right to seek such medical information under the law.

3. Specifically, as cited in Plaintiff's Complaint, 42 U.S.C. § 12112(d)(4) provides "[a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." Plaintiff continues to maintain that his private medical information is protected under this section of the ADA.

4. Despite Plaintiff's clear protection under the law, Defendant's counsel, Mr. Peter G. Land, has conveyed his intent to seek this medical information through pretrial discovery on two separate occasions.

5. Mr. Land first expressed his intent to seek the protected medical information in a conversation with Plaintiff's counsel, Mr. John P. Madden, on March 22, 2007. During this conversation, Mr. Madden objected to Mr. Land's intention to seek such information based on the protected nature of the medical records generally and under the ADA.

6. Mr. Land again stated his intent to seek the information on May 3, 2007 following a status hearing in the present case. Pursuant to LR 37.2, a letter was sent to Mr. Land on May 4, 2007 (attached as Exhibit A).

7. On May 10, 2007, having received no response to Plaintiff's May 4th letter, Plaintiff's counsel Ms. Ylda Kopka telephoned Mr. Land to ask if Defendant was preparing a response.

8.  Mr. Land told Ms. Kopka that Defendant was preparing a response, that it did not wish to undermine the purpose of the litigation through pretrial discovery, and that it would respond to Plaintiff's May 4th letter before issuing subpoenas for the medical records.

9.  Notwithstanding Mr. Land's assurances, on May 10, 2007, Mr. Land response was to issue subpoenas for Plaintiff's private medical records from Evanston Northwestern Healthcare, Manor Care Wilmette, Rush Behavioral Health and Dr. Kyong Chris Oh, which are the four health care providers who examined or treated Plaintiff in 2004 and 2005. The subject subpoenas are attached hereto as Group Exhibit B.

10. The subpoenas issued on behalf of Northwestern University to Evanston Northwestern Healthcare, Manor Care Wilmette, Rush Behavioral Health are identical in that they seek:

> "(1) ALL DOCUMENTS RELATING TO OR REFLECTING THE TREATMENT OF DANA H. HODGDON AT [EACH HEALTH CARE PROVIDER] IN 2004 OR 2005, INCLUDING BUT NOT LIMITED TO MEDICAL RECORDS, DOCUMENTS ABOUT DIAGNOSIS OR PROGNOSIS, AND DISCHARGE INSTRUCTIONS. (2) ALL DOCUMENTS RELATING TO OR REFLECTING COMMUNICATIONS WITH OTHER HEALTHCARE PROVIDERS ABOUT DANA H. HODGDON IN 2004 AND 2005, INCLUDING BUT NOT LIMITED TO REFERRALS AND COMMUNICATIONS WITH OUTSIDE PHYSICIANS OR REHABILITATION CENTER PERSONNEL. (3) ALL DOCUMENTS RELATING TO OR REFLECTING COMMUNICATIONS WITH DANA H. HODGDON IN 2004 OR 2005 ABOUT HIS MEDICAL CONDITION(S), TREATMENT, OR RECOVERY."

11. The subpoena issued to Dr. Oh seeks the same categories of documents described above but is even more unduly intrusive in that it seeks all documents from 2004 to present. See Group Exhibit B.

12. Plaintiff objects to Defendant's course of action in seeking private and protected medical records. Defendant's inquiry into Plaintiff's medical history is overbroad, irrelevant, unduly intrusive and not designed to lead to the discovery of admissible evidence, but rather is in

3

furtherance of Defendant's continued attempts to pry into Plaintiff's medical condition and to harass, intimidate, and embarrass Plaintiff.

13. Importantly, the central allegation of Plaintiff's complaint is that Northwestern University unlawfully refused to return him to work unless he submitted to a three-day medical and psychiatric evaluation by Rush Behavioral Health and at the time this action arose, he refused to complete said evaluation and further refused to authorize the release of any medical records to either Rush Behavioral Health or Northwestern University.

14. Put simply, Northwestern University's repeated attempts to pry into Mr. Hodgdon's medical records and force him to submit to a battery of invasive medical examinations are the entire basis for his action. Northwestern cannot be permitted to access the medical records, the privacy of which is at issue, and thereby circumvent the statute and the entire purpose of the litigation.

15. If Defendant is permitted to obtain Plaintiff's medical records through pretrial discovery procedures, it would improperly negate Plaintiff's enforcement of his rights under the ADA and would violate the intention of the ADA: to protect an employee's right to be free from overly intrusive and excessive investigation into his medical history.

### Defendant's Subpoena to Plaintiff's Subsequent Employer is Designed Solely to Harass, Intimidate and Embarrass Plaintiff

16. On March 5, 2007, Plaintiff's counsel, Mr. Madden, spoke with Defendant's counsel, Mr. Land regarding Defendant's intention to seek discovery of Plaintiff's specific salary at his subsequent employer, DePaul University.

17. On April 13, 2007, Plaintiff propounded his Answers and Objections to Defendant's First Set of Document Requests and Interrogatories, whereby Plaintiff produced

4

documentation related to his subsequent employment, including all employment offers he received and a copy of his 2006 Form W-2 from DePaul University. These documents are attached hereto as Group Exhibit C.

18. Between April 13, 2007 and May 10, 2007, Defendant's counsel raised not one dispute or concern with the completeness of Plaintiff's discovery answers and responses on this point, and Plaintiff's counsel has been in contact with Plaintiff to prepare supplemental responses as the need may arise, for example, if Plaintiff were to be offered another one-year employment contract with DePaul.

19. Nevertheless, on May 10, 2007, Defense counsel, Mr. Land issued a subpoena to Plaintiff's current employer, DePaul University. The subject subpoena which is attached hereto as Exhibit D, seeks the following:

> "(1) ALL DOCUMENTS RELATING TO OR REFLECTING THE RECRUITMENT OR HIRING OF DANA H. HODGDON FROM 2004 TO THE PRESENT, INCLUDING BUT NOT LIMITED TO APPLICATIONS FOR EMPLOYMENT, CORRESPONDENCE, NOTES FROM INTERVIEWS, AND NOTES FROM INTERNAL DISCUSSIONS ABOUT WHETHER TO EXTEND AND OFFER. (2) ALL DOCUMENTS RELATING TO OR REFLECTING THE TERMS OR CONDITIONS OF DANA H. HODGDON'S EMPLOYMENT AT DEPAUL UNIVERSITY FROM 2004 TO THE PRESENT, INCLUDING BUT NOT LIMITED TO APPOINTMENT LETTERS, EMPLOYMENT CONTRACTS, SALARY INFORMATION, BENEFITS INFORMATION, AND ANY NEGOTIATIONS OR DISCUSSIONS REGARDING SUCH TERMS OR CONDITIONS. (3) ANY DOCUMENTS RELATING TO OR REFLECTING ANY DISCUSSIONS OR CORRESPONDENCE ABOUT THE POSSIBILITY OF DANA H. HODGDON BEING GRANTED MORE THAN A ONE-YEAR FACULTY APPOINTMENT (UP TO AND INCLUDING TENURE) AT DEPAUL UNIVERSITY. (4) ALL DOCUMENTS REFLECTING DANA H. HODGDON'S EMPLOYMENT RESPONSIBILITIES AT DEPAUL UNIVERSITY FROM 2004 TO THE PRESENT, INCLUDING BUT NOT LIMITED TO JOB DESCRIPTIONS, CLASS SCHEDULES, LAB SCHEDULES, RESEARCH PROJECTS, COMMITTEE PARTICIPATION, AND ANY OTHER ADMINISTRATIVE RESPONSIBILITIES. (5) ALL DOCUMENTS RELATING TO OR REFLECTING DANA H. HODGDON'S PERFORMANCE AT DEPAUL UNIVERSITY FROM 2004 TO THE PRESENT, INCLUDING BUT NOT LIMITED TO PERFORMANCE EVALUATIONS BY SUPERVISORS, EVALUATIONS BY STUDENTS, AND ATTENDANCE RECORDS. (6) ANY DOCUMENTS RELATING TO OR REFLECTING ANY REQUESTS BY DANA H. HODGDON FOR LEAVE FROM 2004 TO THE PRESENT.

20. Defendant's requests for any and all documents from Plaintiff's subsequent employer – documents which formed no basis for Defendant's and are sought only in an effort to fish for an *ex post facto* support for Defendant's decision engaging in unlawful medical inquiries and preventing Plaintiff from returning to work in violation of the ADA and FMLA – are so overbroad that they can not be considered as reasonably designed to lead to the discovery of admissible evidence and have no connection to this lawsuit.

21. In particular, Defendant's request for "[a]ny documents relating to or reflecting any requests by Dana H. Hodgdon for leave from 2004 to the present," is undeniably targeted at obtaining private and confidential medical information in the possession of Plaintiff's subsequent employer – information which is not only irrelevant to whether Northwestern unlawfully discriminated or retaliated against Plaintiff, but which would be private and personal medical information that is the very basis of this litigation.

22. Moreover, Plaintiff's employment records for a subsequent position at DePaul University are wholly irrelevant to the question of whether Northwestern University violated the ADA and the FMLA by unlawfully inquiring into Plaintiff's health and then refusing to return him to work.

23. Plaintiff's employment records for this subsequent position are unnecessary to Defendant's proof of damages given that there are less intrusive means by which Defendant may obtain the same information and which would not cause Plaintiff to suffer annoyance or embarrassment.

24. Indeed, Plaintiff has already provided Defendant the information in his possession and control that Defendant would likely claim is relevant to its proof of damages, i.e. Plaintiff's

employment contract, offer letter, and W-2 forms from his subsequent employer.  See Group Exhibit C.

25. In light of Plaintiff's cooperation through his discovery answers and responses and in light of Defendant's failure to raise any dispute as to the completeness of those answers and responses, it is evident that Defendant's issuance of a subpoena to DePaul University is simply a ploy to harass, intimidate, annoy, and embarrass Plaintiff, and the subpoena cannot stand.

WHEREFORE, Plaintiff, Dana Hodgdon, respectfully requests that this Court quash the subpoenas served by Defendant on Evanston Northwestern Healthcare, Manor Care Wilmette, Rush Behavioral Health , Dr. Kyong Chris Oh, and on DePaul University, and enter a protective order prohibiting Defendant's counsel from seeking Plaintiff's protected medical information or from contacting Plaintiff's current employer, issue a protective order prohibiting Defendant from issuing any subpoenas or other discovery requests designed to seek Plaintiff's medical records or past medical history, and for any additional or alternative relief as the Court deems just in the premises.

Respectfully submitted,

  s / Ylda M. Kopka
Attorney for Plaintiff

John P. Madden
M. Megan O'Malley
Ylda M. Kopka
O'Malley & Madden, P.C.
542 So. Dearborn Street
Suite 660
Chicago, Illinois  60605
(312)697-1382